Donahue, J.
The question here involved is one arising in the course of the nomination of candidates for county offices, which, under the provisions *64 of Section 5006,. General Code, comes within the jurisdiction of the board of deputy state supervisors of elections of Harrison county. Where the jurisdiction of the board of deputy state supervisors of elections or of the state supervisor of elections has been properly invoked by timely objections, courts have no power to interfere by injunction to prevent the carrying into effect the final judgment of the state supervisor or the deputy state supervisors of elections, but the carrying of this decision into effect by the proper officers then becomes an official duty imposed by law, which may be enforced in the courts of this state by mandamus. Chapman v. Miller et al., 52 Ohio St., 166.
There is some confusion in the statutes as to when objections or other questions arising in the course of nomination of candidates shall be made.Section 5005, General Code, provides that objections in writing to certificates of nomination and nomination papers must be made within five days after the filing thereof. That section was enacted by the legislature prior to the adoption of the amendment to the constitution of the state requiring all nominations for elective, state, district, county and municipal offices to be made at direct primary election or by petition as provided by law. Section 4992, General Code, as it then read, authorized the nomination of candidates for public office to be made by a convention, caucus, meeting of qualified electors, primary election by such electors or the central or executive committee representing a political party, which at the next preceding election for state officers polled at least one per cent. *65 of the entire vote cast in the state, and further provided that “The nominations so made to be valid must be filed as hereinafter provided.” The next section (Section 4993) and subsequent sections in that chapter provide what these certificates of nomination shall contain, and further provide for the nomination of candidates for certain public offices by nomination papers signed by a designated number of electors.
Original Section 5004 provided when and with whom these certificates of nomination and nomination papers of candidates should be filed. Section 4992, General Code, was amended April 10, 1913, to conform to the constitutional amendment requiring all nominations to be by direct primary election or by petition as provided by law, so that this section and the subsequent sections of that chapter deal only with nominations by petition. Nominations by direct primaries are controlled by Sections 4949 to 4991-1, inclusive, as amended April 17, 1913 (103 O. L., 476-487).
On the 2d day of February, 1914, the general assembly of Ohio amended Section 5004, General Code, but retained the words “certificates of nomination.” It is clear that this section can have no application whatever to nominations made by direct primary elections, for that is fully provided for in Chapter 6 of Title 14, Part First, General Code, being Sections 4949 to 4991-1, inclusive, as amended April 17, 1913 (103 O. L., 476). Sec. tion 5005, General Code, relates solely to the cer. tificates of nomination and nomination papers filed *66 under the provisions of Section 5004. If the former section has no application to candidates nominated at direct primary elections, it follows that Section 5005 does not limit the time in which objections may be filed in writing to the nomination of candidates nominated at such primary election.
It is insisted-by the relator that Section 5090, General Code, applies to both primary and general elections/ This section requires that all ballots counted by the judges and clerks of elections at a general election shall be carefully preserved for thirty days, and at the expiration of that time destroyed, unless a contest of election is then pending. In such case they shall not be destroyed until the contest is finally determined. In this particular case the ballots cast at this primary election were preserved in the manner and for the length of time required by Section 5090, General Code. It was also conceded in the argument of this case that these ballots have not’ yet been destroyed. Whether Section 5090, General Code, has any application to primary elections is in nowise important in this case. It appears from the petition that no written objections were filed by the relator with the board of deputy state supervisors until fifty-five days after the primary election was held, and this was less than forty days before the next general election. We are not disposed to hold, at this time, that the board of deputy state supervisors of elections has no jurisdiction whatever to hear and determine objections filed or questions raised in the course of the nomination of candidates for public . *67 office filed less than forty days before the next general election. It is sufficient to say that a court will not compel it by peremptory writ of mandamus to consider and determine objections filed or questions raised after the time the statutes of the state direct the state supervisor of elections to certify the names of candidates and form of ballots to the board of deputy state supervisors of elections of the several counties of the state.
It is averred in the petition that the board of deputy state supervisors of elections considered the objections filed with it, and being unable to arrive at a decision, submitted the question in controversy to the state supervisor of elections, who summarily decided the question. It is insisted, however, on the part of the defendant, that these objections were never submitted to the state supervisor of elections, and by agreement of counsel the letter written on behalf of the board of deputy state supervisors of elections directed to the secretary of state and his reply to this letter, are submitted to this court with the request that that question be determined now, although it is not raised by the demurrer to the petition but would be raised immediately by an answer if the demurrer to the petition should be overruled. In view of the urgent necessity for an early disposition of this case the court has considered this question so presented by agreement of counsel.
It is apparent from the letters submitted to this court that the jurisdiction of the state supervisor of elections was never properly invoked, and that *68 he did not decide or attempt to decide the controversy. Objections filed by relator challenge the correctness of the count of the ballots cast in certain precincts in that county at the primary election for Republican candidate for representative to the general assembly of Ohio. The determination of this question determines who is legally nominated for this office by the Republicans of that county. The question of the duty of the board in reference to these objections is merely preliminary to the determination of the real question presented by the objections.
The board of deputy state supervisors caused a letter to be written to the secretary of state requesting advice in reference to its duties in the premises. This letter in this respect is as follows: “Kindly advise us what to do in the case, as we are not sufficiently versed in the law to act on our own judgment.” The state supervisor of elections, on receipt of this letter, did not determine the controversy in any particular whatever, but immediately wrote to the deputy state supervisors of elections of Harrison county directing their attention to that portion of Section 5006, General Code, which requires it to decide the objections, and further advised that in order to decide these objections it would be necessary to recount the ballots cast at the primary election. If the state supervisor of elections had understood and believed that the objections had been referred to him for decision for the reason that the board of deputy state supervisors could not agree or could not arrive at any *69 decision in reference thereto, he probably would have proceeded to decide the controversy, and that would have been the end of it. If he had decided the question it would have been folly to instruct the board of deputy state supervisors to decide the same controversy, for the jurisdiction of the state supervisor of elections could not attach until the jurisdiction of the board of deputy state supervisors ended. However that may be, the state supervisor of elections is not here seeking to enforce any order or judgment made by him in reference to this controversy. Nor is the board of deputy state supervisors of elections here asking that it be relieved from obeying the injunction granted by the common pleas court and be permitted to carry into effect the judgment it arrived at in reference thereto.
This action is brought by the relator against the board of deputy state supervisors of elections in his own behalf and in his own private interest. Had the relator been vigilant in the assertion of his own rights, this court would be equally vigilant in compelling by mandamus the election officers to do and perform any official duty clearly imposed upon them by law.

Writ refused.

Nichols, C. J., Shauck, Johnson, Wanamaker, Newman and Wilkin, JJ., concur.